**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**NAZIR KHAN,**

**Petitioner,**

**vs.** **9:26-CV-1800 (MAD)**

**DAVID VENTURELLA, MARKWAYNE MULLIN, TODD BLANCHE, and PHILIP RHONEY,** ***in their official capacities*****,**

**Respondents.**

---

**APPEARANCES:** **OF COUNSEL:**

**LAW OFFICE OF KATHY MANLEY** **KATHY E. MANLEY, ESQ.**
26 Dinmore Road
Selkirk, New York 12158
Attorney for Petitioner

**OFFICE OF THE UNITED STATES ATTORNEY** **ALEXIS M. OSBORNE, AUSA**
445 Broadway, Room 218
Albany, New York 12207
Attorney for Respondents

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

On September 22, 2026, Nazir Khan ("Petitioner"), through counsel, filed a petition for writ of habeas corpus. *See* Dkt. No. 1. The petition alleges that United States Immigration and Customs Enforcement ("ICE") illegally detained Petitioner, who is a citizen of Pakistan, during an ICE check-in in Malta, New York. *See id.* at 2, ¶ 1.[1] Petitioner seeks immediate release under the

[1] Paragraph numbering restarts in the middle of the petition. For clarity, the Court specifies both the page and paragraph numbers of the cited portions.

Immigration and Nationality Act, Administrative Procedure Act, and the Fourth and Fifth Amendments to the United States Constitution. *See id.* at 11-14, ¶¶ 35-51. Alternatively, Petitioner seeks a bond hearing. *See id.* at 14-15, ¶ d. Petitioner also seeks an award of costs and reasonable attorneys' fees. *See id.* at 15, ¶ f.

On September 28, 2026, David Venturella, Acting Director of ICE; Markwayne Mullin, Secretary of the Department of Homeland Security ("DHS"); Todd Blanche, Attorney General of the United States; and Philip Rhoney, Acting Director of ICE's Buffalo Field Office (collectively, "Respondents") filed a letter responding to the petition. *See* Dkt. No. 5. Respondents dispute the statutory authority for Petitioner's detention and argue that, even if the Court grants the petition, a bond hearing is the appropriate form of relief, rather than immediate release. *See id.* at 1-4. Respondents also argue that Petitioner's fee application should be denied, or in the alternative, stayed. *See id.* at 4-5.

## II. BACKGROUND

The parties do not dispute that Petitioner was detained during an ICE check-in in Malta on September 22, 2026, *see* Dkt. No. 1 at 2, ¶ 1; Dkt. No. 5 at 2, or that he is a citizen of Pakistan who entered the United States without authorization on or about October 2, 2024, *see* Dkt. No. 1 at 2, ¶ 1, 4 ¶ 7; Dkt. No. 5 at 1. While the petition contains few facts about Petitioner's background and the circumstances leading up to the September 2026 arrest, Respondent's letter and supporting documentation offer additional information.

According to Respondents, Petitioner was apprehended and processed on October 2, 2022, the same day that he entered the country, and was issued an order of expedited removal on October 3, 2024. *See* Dkt. No. 5 at 1. An attached DHS record states the encounter happened within about two hours of when he entered the country. *See* Dkt. No. 5-1 at 2-3. After Petitioner

was apprehended, he expressed a fear of returning to Pakistan. *See* Dkt. No. 5 at 1. A credible fear interview was conducted on November 26, 2024, which resulted in a positive credible fear determination. *See id.* at 1; *see also* Dkt. No. 5-4. On November 27, 2024, Petitioner was served with a notice to appear in Immigration Court, which placed him in removal proceedings. *See* Dkt. No. 5 at 1; *see also* Dkt. No. 5-5. He was granted one year of discretionary parole on December 3, 2024. *See* Dkt. No. 5 at 1-2; *see also* Dkt. No. 5-6. Petitioner has no criminal history, and was working as a manager at a local market after DHS approved him to work on June 30, 2025. *See* Dkt. No. 5-9 at 3.

The parties agree that Petitioner was ordered removed from the United States on September 3, 2026. *See* Dkt. No. 1 at 4, ¶ 7; Dkt. No. 5 at 2. Petitioner appealed that decision on September 19, 2026, and the appeal remains pending. *See* Dkt. Nos. 5-7, 5-8. Respondents do not contest the propriety of the appeal. *See* Dkt. No. 5 at 2. Nevertheless, they claim that "[o]n September 22, 2026, ICE Enforcement and Removal Operations ("ERO") arrested Petitioner at a scheduled check-in appointment . . . ERO took Petitioner into immigration custody and served an administrative immigration arrest warrant shortly thereafter." *Id.* (citations omitted); *see also* Dkt. Nos. 5-9, 5-10. Respondents provide a copy of a warrant purportedly authorizing Petitioner's arrest. *See* Dkt. No. 5-10 (identifying "the pendency of ongoing removal proceedings against [Petitioner]" as the basis for his arrest). Petitioner contests the legitimacy of the warrant, arguing that he "was detained without due process in an apparently warrantless arrest[.]" Dkt. No. 1 at 2, ¶ 1; *see also* Dkt. No. 5 at 2 ("ERO took Petitioner into immigration custody and served an administrative immigration arrest warrant shortly thereafter") (citation omitted); Dkt. No. 5-9 at 4 ("[Petitioner] was served DHS form I-200 'Warrant of Arrest of Alien' as soon as was safe and practical to do so"); Dkt. No. 5-10 at 1 (DHS 1-200 Warrant for Arrest of Alien showing that the

warrant was served at "12:25" on September 22, 2026). On the DHS Record of Deportable/Inadmissible Alien form, it indicates that Petitioner was arrested on September 22, 2026 at 10:35 A.M., the I-200 Warrant for Arrest of Alien was issued and signed at 12:00 P.M., and the warrant was served at 12:25 P.M. *See* Dkt. No. 5-9 at 2.

## III. DISCUSSION

### A. Legal Standard

A district court may "grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Veletanga v. Noem*, No. 25-CV-9211, 2025 WL 3751865, *2 (S.D.N.Y. Dec. 26, 2025) (quoting *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003), *superseded by statute on other grounds*, 8 U.S.C. § 1252(a)(4)); *see* 28 U.S.C. § 2241(c)(3). "This jurisdiction includes habeas petitions filed by immigration detainees[,]" *Padilla Molina v. DeLeon*, No. 25-CV-6526, 2025 WL 3718728, *2 (E.D.N.Y. Dec. 23, 2025) (citing *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020)), including non-citizens, *see R.P.L. v. Maldonado*, 814 F. Supp. 3d 301, 304 (E.D.N.Y. 2025) (citation omitted).

"[T]he petitioner bears the burden of proving that he is being held contrary to law[,] and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence." *Veletanga*, 2025 WL 3751865, at *2 (internal quotation marks omitted) (quoting *Dzhabrailov v. Decker*, No. 20-CV-3118, 2020 WL 2731966, *3 (S.D.N.Y. May 26, 2020)); *see Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011).

### B. Statutory Authority for Petitioner's Detention

The parties dispute the statutory authority for Petitioner's detention. Petitioner argues that 8 U.S.C. § 1226 applies. *See* Dkt. No. 1 at 11, ¶ 36. That provision states, in relevant part: "On a warrant issued by the Attorney General, a[] [noncitizen] may be arrested and detained pending a

decision on whether the [noncitizen] is to be removed from the United States." 8 U.S.C. § 1226(a). "[D]etention under § 1226(a) is discretionary[,]" *Gaspar v. Akshar*, No. 9:26-CV-118, 2026 WL 699369, *4 (N.D.N.Y. Feb. 17, 2026) (citing *Tumba v. Francis*, 813 F. Supp. 3d 394, 399 (S.D.N.Y. 2025)); *see Barbosa da Cunha v. Freden*, 175 F.4th 61, 72 (2d Cir. 2026), *reh'g en banc denied*, — F.4th —, No. 25-3141, 2026 WL 2880761 (2d Cir. Sept. 25, 2026), *cert. granted sub nom. Rhoney v. Barbosa da Cunha*, 609 U.S. —, No. 26-104, 2026 WL 2942994 (U.S. Oct. 1, 2026), and that provision "allows a noncitizen to 'request a bond hearing before an immigration judge,'" *Hassan v. Bondi*, No. 9:26-CV-319, 2026 WL 891602, *2 (N.D.N.Y. Apr. 1, 2026) (quoting *O.F.B. v. Maldonado*, 810 F. Supp. 3d 394, 400 (E.D.N.Y. 2025)).

Respondents argue that 8 U.S.C. § 1225(b)(1) applies. *See* Dkt. No. 5 at 2-3. "[U]nder Section 1225(b)(1), people subject to expedited removal are subject to mandatory detention." *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 293 (E.D.N.Y. 2025), *appeal dismissed*, No. 26-219, 2026 WL 1208948 (2d Cir. Feb. 25, 2026). "Section 1225(b)(1) governs noncitizens: (1) who are inadmissible for lack of proper entry documents or because they engaged in fraud or a willful misrepresentation of a fact on their application for admission; *and* (2) who fall within either the 'Arriving Aliens Provision' or the 'Designation Provision.'" *Id.* (citing 8 U.S.C. § 1225(b)(1)(A)(i), (iii)(II)) (other citation omitted). Section 1225(b)(1)(B)(iii)(IV) requires that "[a]ny [noncitizen] subject to the procedures under this clause shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed." 8 U.S.C. § 1225(b)(1)(B)(iii)(IV).

The Second Circuit recently determined that 8 U.S.C. § 1226 "plainly applies to noncitizens . . . who are present in the United States, but charged as inadmissible for entering the

country without inspection and admission." *Barbosa da Cunha*, 175 F.4th at 73.[2] On the other hand, 8 U.S.C. § 1225(b)(2)(A) "applies only to a noncitizen who is both an 'applicant for admission' and who is 'seeking admission[.]'" *Id.* at 74. The Second Circuit held that "'applicant for admission' is defined by statute to mean any noncitizen who is present in the United States and has not been admitted, or is arriving in the United States." *Id.* (citing 8 U.S.C. § 1225(a)(1)). In contrast, it construed "seeking admission" as referring to a noncitizen's requests for "inspection and authorization" if he is not yet physically present in the United States but wishes to enter. *Id.* (quoting 8 U.S.C. § 1101(a)(13)(A)). According to the Second Circuit, "because Section 1225(b)(2)(A) applies only to a noncitizen who is both an 'applicant for admission' and 'seeking admission,'" it does not apply to petitioners in this Circuit who are already inside the United States. *Id.* (citation omitted).

To the extent that Respondents rely on *Matter of M-S-*, 27 I. & N. Dec. 509 (U.S. Atty. Gen. 2019), to argue that "a noncitizen initially processed under § 1225(b)(1) remains subject to mandatory detention upon return to custody, even after parole, because parole 'does not constitute an admission' and does not authorize bond review[,]" Dkt. No. 5 at 2, the Court declines to follow it, *see Nimaga v. Francis*, No. 26-CV-2868, 2026 WL 1656049, *6 n.8 (E.D.N.Y. June 8, 2026) ("It defies logic and the statutory scheme as a whole to conclude that mandatory detention attaches to a noncitizen who was previously in expedited removal proceedings but is now in standard removal proceedings if, and only if, they assert an asylum defense. To the extent *Matter of M-S-*, a 2019 decision by then-Attorney General William Barr, holds or suggests otherwise, the

---

[2] As noted, the Supreme Court has granted certiorari in *Barbosa da Cunha*. However, "[g]rants of certiorari do not change the law, and a district court remains bound by circuit precedent until the Supreme Court or the court of appeals changes that precedent." *In re Generali COVID-19 Travel Ins. Litig.*, 577 F. Supp. 3d 284, 294 n.2 (S.D.N.Y. 2021) (citations omitted).

Court finds it wholly unpersuasive . . .") (citing *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 384-96 (2024)). "[T]he Court is not bound by the Attorney General's interpretation and instead 'must exercise independent judgment in determining the meaning of statutory provisions.'" *Singh v. Hott*, No. No. 4:26-CV-256, 2026 WL 1880217, *3 (W.D. Ky. June 30, 2026) (quoting *Loper Bright Enters.*, 603 U.S. at 394).

Respondents attempt to distinguish *Barbosa da Cunha* on factual grounds, arguing that "*Da Cunha* does not govern cases, such as this one, in which a noncitizen was apprehended at or near the time of entry, processed for expedited removal under § 1225(b), and subsequently released on parole under 8 U.S.C. § 1182(d)(5)(A)." Dkt. No. 5 at 2. Respondents have espoused this same argument numerous times before the Court. *See Nickson Merissaint v. Venturella*, No. 9:26-CV-1695, Dkt. No. 5 at 2-3 (N.D.N.Y. Sept. 15, 2026); *Rodriguez Lazarte v. Venturella*, No. 9:26-CV-1534, Dkt. No. 7 at 2 (N.D.N.Y. Aug. 21, 2026); *Ebrahimi v. Rhoney*, No. 9:26-CV-1436, Dkt. No. 7 at 3-4 (N.D.N.Y. Aug. 10, 2026); *Reyes Rodriguez v. Venturella*, No. 9:26-CV-1440, Dkt. No. 6 at 2 (N.D.N.Y. July 30, 2026). It has been rejected each time. *See Nickson Merissaint v. Venturella*, No. 9:26-CV-1695, 2026 WL 2935533, *2 (N.D.N.Y. Sept. 30, 2026) ("Petitioner, who was paroled into the United States approximately four years before his arrest, was not seeking admission when he was arrested, and his present detention is governed by § 1226(a)"); *Rodriguez Lazarte v. Venturella*, No. 9:26-CV-1534, 2026 WL 2581945, *2-3 (N.D.N.Y. Sept. 1, 2026) ("Although petitioner was initially encountered at a port of entry and thereafter released on parole under § 1182(d)(5)(A), that distinction does not alter the analysis"); *Vergel Gonzalez v. Rhoney*, Nos. 9:26-CV-1435, 9:26-CV-1436, 2026 WL 2327690, *7-9 (N.D.N.Y. Aug. 12, 2026); *Reyes Rodriguez v. Venturella*, No. 9:26-CV-1440, 2026 WL 2321550, *2 (N.D.N.Y. Aug. 11, 2026) ("[A]fter reviewing the parties' submissions, the Court

finds that *Barbosa da Cunha* is applicable here"). The Court once again rejects Respondents' attempted distinction and finds that *Barbosa da Cunha* is applicable here.

Petitioner is not a new arrival to the United States; he has been here for approximately two years. Since the purported expiration of his parole, he has lived in the United States for approximately one year. *See* Dkt. No. 5-6 at 1 (indicating that Petitioner's parole would expire one year from December 3, 2024). Aside from referencing the order of removal, which is still being adjudicated on appeal, Respondents have not shown that Petitioner's detainment on September 22, 2026, was a continuation of his initial border encounter nearly two years earlier. *See* Dkt. No. 5 at 2. It is also worth noting that Respondents admitted that Petitioner is not an "arriving alien." *See* Dkt. No. 5-5 at 1 (in DHS's Notice to Appear, the "You are an arriving alien" box *is not* checked, but the "You are an alien present in the United States who has not been admitted or paroled" box *is* checked). As the Western District of New York has noted, a noncitizen's entitlement to remain in the country indefinitely is distinct from the opportunity to be free from custody while his immigration proceedings are ongoing. *See Cabrera Martinez v. Marich*, 816 F. Supp. 3d 356, 368 (W.D.N.Y. 2025) (citing *Campbell v. Almodovar*, No. 1:25-CV-9509, 2025 WL 3538351, *8 (S.D.N.Y. Dec. 10, 2025), *opinion clarified*, No. 1:25-CV-9509, 2025 WL 3626099 (S.D.N.Y. Dec. 15, 2025)). Section 1226 contemplates the latter. *See* 8 U.S.C. § 1226(a) (emphasis added) ("[A] [noncitizen] *may be* arrested and detained pending a decision on whether the alien is to be removed from the United States").

Accordingly, the Court finds that 8 U.S.C. § 1226 applies in this case.

**C. Merits of the Petition**

To evaluate whether a petitioner's detention violates due process, courts analyze the following factors:

> (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

*Hernandez Villasmil v. Blanche*, No. 9:26-CV-713, 2026 WL 1235068, *8 (N.D.N.Y. May 5, 2026) (quoting *Black v. Decker*, 103 F.4th 133, 151 (2d Cir. 2024)); *see also Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Although Petitioner was ordered removed on September 3, 2026, he has exercised his right to appeal that decision, and the appeal is pending. *See* Dkt. Nos. 5-7, 5-8. Thus, the order of removal is not yet final and does not justify Petitioner's detention. *See* 8 C.F.R. § 1241.1(a) (noting that an order of removal becomes final when, *inter alia*, the Board of Immigration Appeals dismisses an appeal); *Colindres v. Tellez*, No. 26-CV-663, 2026 WL 509493, *2-3 (E.D.N.Y. Feb. 23, 2026) (determining that the petitioner's appeal of a removal order rendered it non-final and ordering his release from custody); *cf. De Moura ex rel. Ferreira v. Warden, Broome Cnty. Corr. Facility*, No. 9:26-CV-449, 2026 WL 1705979, *3 (N.D.N.Y. June 12, 2026) (finding that the petitioner's order of removal was final, and detention became mandatory, because he did not appeal the order of removal); *Villa ex rel. Villa v. Warden, Broome Cnty. Corr. Facility*, 828 F. Supp. 3d 335, 340-41 (N.D.N.Y. 2026) (same).

Petitioner's private interest "is the most significant liberty interest there is—the interest in being free from imprisonment." *Rashid v. Trump*, 807 F. Supp. 3d 349, 367 (D. Vt. 2025) (quoting *Velasco Lopez*, 978 F.3d at 851); *see also Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (citations omitted). Petitioner has been detained for over a week and has a pending appeal of a removal order. This Court has previously noted that, "'[i]n the case of an appeal, . . . detention

may stretch on indefinitely[,]' and as a result, 'the risk of an erroneous deprivation of liberty may become more egregious . . . ." *Martins v. Akshar*, 837 F. Supp. 3d 387, 397 (N.D.N.Y. 2026) (quoting *Rashid*, 807 F. Supp. 3d at 365).

There is also no indication that Petitioner received a pre-detention hearing, or any kind of individualized custody determination, before his sudden arrest. This Court recently recognized that "§ 1226(a)'s implementing regulations require an individualized determination as to whether the detention of a noncitizen is appropriate after considering whether the noncitizen (1) is a danger to property or persons and (2) is likely to appear for any future proceeding." *Farfan Parra v. Ball*, No. 9:26-CV-1162, 2026 WL 1960934, *4 (N.D.N.Y. June 30, 2026) (internal quotation marks omitted) (quoting *Hyppolite v. Noem*, 808 F. Supp. 3d 474, 491 (E.D.N.Y. 2025)). The Court determines that Respondents "have not demonstrated, or even suggested, that any individualized determination was made as to whether Petitioner posed any risk of flight or danger before he was detained." *Id.* The record shows only that Petitioner was arrested during a scheduled ICE check-in, which Petitioner voluntarily showed up for. *See* Dkt. No. 5 at 2; Dkt. Nos. 5-9, 5-10. His arrest was based on a warrant, which Respondents concede was served *after* his arrest, and which was issued over an hour *after* his arrest. *See* Dkt. No. 5 at 2; Dkt. No. 5-9 at 2; Dkt. No. 5-10 at 1.

The record shows that Petitioner was arrested at 10:35 A.M., the warrant was issued at 12:00 P.M., and the warrant was served at 12:25 P.M. *See* Dkt. No. 5-9 at 2; Dkt. No. 5-10 at 1. "ICE must obtain a warrant before arresting a noncitizen unless the officer has reason to believe that the [noncitizen] is in the United States in violation of any such law or regulation *and* is likely to escape before a warrant can be obtained for his arrest." *Rea v. Ball*, No. 9:26-CV-1248, 2026 WL 1959270, *2 (N.D.N.Y. July 2, 2026) (internal quotation marks omitted) (emphasis in

original) (quoting *Curimilma Quille v. Blanche*, No. 26-CV-2818, 2026 WL 1453889, *5 (E.D.N.Y. May 22, 2026)); *see also* 8 C.F.R. § 287.8(c)(2)(ii). Respondents provide zero justification for issuing a warrant after Petitioner's arrest. While it seems that Petitioner does not have a stable address in the United States, *see* Dkt. No. 5-9 at 4, Respondents have not argued that Petitioner tried to escape during the ICE check-in or at any other time. To the contrary, Petitioner was doing what he was supposed to and showed up to his scheduled ICE check-in after the order of removal was issued.

Regarding the Government's interests, "courts have recognized that detention in the immigration context has two regulatory goals: ensuring the appearance of [noncitizens] at future immigration proceedings and preventing danger to the community." *Martins*, 837 F. Supp. 3d at 397 (internal quotation marks omitted) (quoting *Rashid*, 807 F. Supp. 3d at 369; citing *Velasco Lopez*, 978 F.3d at 854). Respondents have not shown how Petitioner's detention furthers these goals. They have not argued that Petitioner poses a flight risk, and the record suggests the opposite. Petitioner reported to his ICE check-in as scheduled, where he was arrested. *See* Dkt. No. 5 at 2; Dkt. No. 5-9 at 2. Petitioner was employed, with DHS's permission, as a manager of a local market. *See* Dkt. No. 5-9 at 3. Moreover, Petitioner has no criminal history, *see id.*, and Respondents do not argue that he poses a risk to the community, or jeopardizes national security. Respondents do not address the *Mathews* factors whatsoever in their response.

Based on the foregoing, the Court finds Petitioner's detention is unjustified under 8 U.S.C. § 1226's discretionary framework and violative of Petitioner's constitutional rights. *See Hernandez Villasmil*, 2026 WL 1235068, at *9 (citation omitted); *Torrez Arce v. Blanche*, No. 9:26-CV-501, 2026 WL 1430509, *4-6 (N.D.N.Y. May 21, 2026). Because Respondents have not offered any reason for Petitioner's detention—other than a questionable warrant and an order

of removal that is not yet final due to Petitioner's timely appeal—the Court orders Petitioner's release from custody. *See Hernandez Villasmil*, 2026 WL 1235068, at *9 ("As the Government has not presented a single reason why Petitioner should be detained—they have not argued nor presented any evidence that he is a danger to the community or a flight risk—and Petitioner has remained free in this country, working, law abiding, and waiting for his June 2027 immigration court hearing, immediate release is the appropriate remedy") (citations omitted); *Rea*, 2026 WL 1959270, at *4 (ordering immediate release where the petitioner was arrested without a warrant and the *Mathews* factors weighed against keeping the petitioner detained) (citation omitted). However, the Court will allow Respondents until 5:00 P.M. tomorrow, October 3, 2026 to release Petitioner.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, the Court hereby

**ORDERS** that Petitioner's petition for writ of habeas corpus (Dkt. No. 1) is **GRANTED**; and the Court further

**ORDERS** that Petitioner's request for costs and reasonable attorneys' fees is **DENIED** as premature; and the Court further

**ORDERS** that Petitioner be released from custody by October 3, 2026, at 5:00 P.M.; and the Court further

**ORDERS** that Respondents certify compliance with the Court's order regarding Petitioner's release no later than October 4, 2026, at 12:00 P.M.; and the Court further

**ORDERS** that, having considered the particular circumstances of this case and *Mathews v. Eldridge*, 424 U.S. 319 (1976), Petitioner shall not be re-detained without adequate notice to

Petitioner and without an opportunity to be heard at a hearing where the Government will have the burden of showing that his detention is authorized under 8 U.S.C. § 1226(a) and the burden to demonstrate by clear and convincing evidence that Petitioner is either a danger to the community or a flight risk; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Petitioner's favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: October 02, 2026
Albany, New York

Mae A. D'Agostino
U.S. District Judge